**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION, <br><br> Petitioner, <br><br> v. <br><br> DEPARTMENT OF TRANSPORTATION, <br><br> Respondent. | No. 25-1026 |

**GOVERNMENT'S OPPOSITION TO PETITIONER'S**
**MOTION TO LIFT ABEYANCE**

This Court should deny petitioner's request to lift the abeyance. A completed draft of a notice of proposed rulemaking that would materially amend the rule challenged here is currently undergoing review within the U.S. Department of Transportation (Department). Petitioner fails to demonstrate the immediate and significant hardship that would be required to outweigh the interests of judicial economy served by the continued stay.

This case involves a challenge to a 2024 rule establishing a new Federal Motor Vehicle Safety Standard promulgated by the National

Highway Traffic Safety Administration (NHTSA), an operating administration of the Department. *See Federal Motor Vehicle Safety Standards; Automatic Emergency Braking Systems for Light Vehicles*, 89 Fed. Reg. 39,686 (May 9, 2024*), as amended on reconsideration by Federal Motor Vehicle Safety Standards; Automatic Emergency Braking Systems for Light Vehicles*, 89 Fed. Reg. 93,199 (Nov. 26, 2024) (the Rule). Following the change in administration, NHTSA undertook a comprehensive review of the Rule and has a completed draft of a notice of proposed rulemaking to revise the Rule. That draft is currently undergoing review within the Department before submission to the Office of Information and Regulatory Affairs. Given the active rulemaking effort underway, this case has appropriately remained in abeyance, with petitioner's consent, since February 2025.

Petitioner provides no persuasive reason to disturb that status quo now. Because NHTSA plans to propose amendments to the Rule, judicial economy favors maintaining the abeyance to which petitioner has previously agreed pending the outcome of the rulemaking. Petitioner identifies no "immediate and significant hardship" that it (or its members) face from the abeyance, *Utah v. EPA*, No. 23-1157, 2025

2

WL 1354371, at *2 (D.C. Cir. May 2, 2025) (statement of Rao, J.)

(quotation marks omitted), including because the Rule does not require

regulated entities to comply with its requirements until September

2029 at the earliest, *see* 89 Fed. Reg. at 93,199.[1]  Given NHTSA's

ongoing and concrete progress, petitioner's request should be denied.

## BACKGROUND

In 2021, Congress enacted the Infrastructure Investment and Jobs

Act, which instructed the Secretary of Transportation to promulgate a

rule to establish minimum performance standards with respect to crash

avoidance technology and to require that all passenger motor vehicles

be equipped with a forward collision warning (FCW) and automatic

emergency braking (AEB) system.  *See* Pub. L. No. 117-58, § 24208, 135

Stat. 429, 823 (Nov. 15, 2021).  FCW and AEB systems alert the driver

if a collision is imminent and automatically apply the brakes if the

driver fails to do so.  *Id*.

---

[1]  As explained below, NHTSA is considering further extending the Rule's compliance lead time.  *See* White House Office of Management & Budget, Office of Info. & Reg. Affairs, *Amendments to FMVSS No. 127; Light Vehicle Automatic Emergency Braking*, https://perma.cc/3FZC-JJB6.

Pursuant to that congressional directive, NHTSA promulgated a Federal Motor Vehicle Safety Standard related to AEB systems in May 2024. *See* 89 Fed. Reg. at 39,686. In response to reconsideration petitions, including one filed by petitioner, NHTSA issued an amended version of the Rule in November 2024. *See* 89 Fed. Reg. at 93,201. As amended, the Rule requires manufacturers to install AEB systems in all new light vehicles and establishes performance requirements that such systems must meet. *Id.* NHTSA required that manufacturers meet the Rule's requirements by September 1, 2029 (except for certain small-volume manufacturers, which have until September 1, 2030). *See* 89 Fed. Reg. at 39,690.

Petitioner filed this action challenging certain aspects of the Rule on January 17, 2025. Following the change in administration, and with petitioner's consent, NHTSA moved to hold the case in abeyance, explaining that the agency "is under new leadership and is reviewing the rule at issue in this litigation," and that such review "could lead to its modification." Abeyance Mot. 2 (Feb. 24, 2025). NHTSA further explained that abeyance would "conserve judicial resources and promote the efficient and orderly disposition of this appeal, including by

ensuring that any briefing or arguments presented to this Court will reflect the views of current agency leadership." *Id.* This Court granted the request in February 2025.

Since then, NHTSA has actively worked on a proposal to revise this technically complex Rule. NHTSA has met with petitioner on three occasions to better understand its objections to the Rule. *See* Pet.'s Mot. 5 (May 7, 2025). The first two of those meetings occurred before the confirmation of NHTSA Administrator Jonathan Morrison, who participated in the most recent meeting on January 20, 2026. After careful consideration of the issues, including the views shared by petitioner, NHTSA has completed a draft of a notice of proposed rulemaking that is undergoing review within the Department and, if finalized, would amend the Rule in material respects. Specifically, and among other things, NHTSA is considering further extending the compliance lead time, *see* White House Office of Management & Budget, Office of Info. & Reg. Affairs, *Amendments to FMVSS No. 127; Light Vehicle Automatic Emergency Braking,* https://perma.cc/3FZC-JJB6, as it has recently done for other reconsidered rules, *see, e.g., Event Data Recorders,* 91 Fed. Reg. 28,432 (May 18, 2026); *Federal Motor Vehicle*

*Safety Standards; Occupant Crash Protection, Seat Belt Reminder Systems*, 91 Fed. Reg. 17,144 (Apr. 6, 2026).  NHTSA has regularly filed status reports updating this Court on the progression of the rulemaking.  And petitioner has consistently consented to further extensions of the abeyance, including as recently as March 23, 2026.  *See* Status Report (Mar. 23, 2026); *see also* Status Report (Feb. 5, 2026); Status Report (Dec. 22, 2025); Status Report (Sep. 22, 2025); Status Report (July 3, 2025); Status Report (Apr. 28, 2025).

## ARGUMENT

Continued abeyance is the most prudent course of action here.  As Judge Rao recently emphasized, the decision to hold a case in abeyance is committed to the Court's discretion and is primarily intended to promote judicial economy.  *Utah*, 2025 WL 1354371, at \*1 (statement of Rao, J.).  Abeyance thus "may be warranted when there are legitimate developments that could obviate the need for judicial review, such as . . . when an agency plans to reconsider a challenged rule."  *Id.* at \*2.  The Court also weighs "any potential prejudice to the parties."  *Id.*  But the mere "possibility of inconvenience will not categorically outweigh the need for the sound use of judicial resources," even where "abeyance is

opposed and a party points to some hardship." *Id.* To overcome the interest in judicial economy, "any hardship caused by [the] deferral must be immediate and significant." *American Petroleum Inst. v. EPA*, 683 F.3d 382, 389 (D.C. Cir. 2012) (quotation marks omitted). Finally, the Court considers "the duration for which it will defer review." *Utah*, 2025 WL 1354371, at *3 (statement of Rao, J.). Although "the length of time a case is held in abeyance must be kept within the bounds of moderation," "a longer abeyance, coupled with periodic status reports, may be justified if an agency has committed to reconsidering a challenged rule." *Id.* (quotation marks omitted). All of these factors favor continuing the abeyance here.

1.      Continued abeyance serves judicial economy. As set out above, NHTSA now has a complete draft of a notice of proposed rulemaking that, if finalized, would materially amend the Rule. Abeyance obviates the need for the parties to brief, and for this Court to address, the lawfulness of a rule that will likely be amended during the pendency of the litigation. This Court routinely holds in abeyance challenges to rules that are under active reconsideration. *See Utah*, 2025 WL 1354371, at *3 & n.3 (statement of Rao, J.) (providing

7

examples); *see also American Petroleum Inst.*, 683 F.3d at 384 (holding case in abeyance pending finalized rulemaking and concluding that judicial intervention would be premature).

NHTSA, moreover, should not be put in the untenable position of defending a rule that may no longer align with its goals and objectives. Consistent with the Court's role as the "branch of last resort," it should allow NHTSA to complete the reconsideration process before engaging in judicial review of a rule that will not take effect for more than three years. *American Petroleum Inst.*, 683 F.3d at 386-87 ("Postponing review can . . . conserve judicial resources, and it comports with our theoretical role as the governmental branch of last resort." (quotation marks omitted)).

**2.** Petitioner faces no "immediate and significant" hardship from keeping the case in abeyance. *American Petroleum Inst.*, 683 F.3d at 389 (quotation marks omitted). The Rule does not require compliance until September 2029 at the very earliest, so it will be years before any regulated entity faces even the threat of liability under the Rule. *See* 89 Fed. Reg. at 39,690. Petitioner complains about "its members' need for certainty," Pet.'s Mot. 5, but "mere uncertainty" does

"not categorically outweigh the need for the sound use of judicial resources," *Utah*, 2025 WL 1354371, at *2 (statement of Rao, J.). Nor would promptly lifting the abeyance even provide petitioner the certainty it seeks. Were the Court to do so, NHTSA would have to determine what position to take in this litigation; it is also possible that intervenors might attempt to participate. Either way, it could easily take over a year for a panel of this Court to issue a ruling—and if any party sought further review, the litigation could drag on significantly longer.

Petitioner also suggests that there is a need to litigate now because its members require "lead time[]" "to engineer, test, and manufacture the AEB systems contemplated by the Rule." Pet.'s Mot. 2, 5. But petitioner agreed that continued abeyance was appropriate as recently as March 23, 2026, and it offers no explanation for what has changed in the intervening few weeks. Petitioner and its members, moreover, have been on notice of the need to equip new vehicles with at least some form of AEB system since at least the passage of the Infrastructure Investment and Jobs Act in 2021.

**3.** Finally, this case involves a technically complex rule, and the current abeyance is well "within the bounds of moderation." *Utah*, 2025 WL 1354371, at *3 (statement of Rao, J.) (quotation marks omitted). As noted, "a longer abeyance" may be appropriate where, as here, an agency has "committed to reconsidering a challenged rule." *Id.* And this Court routinely holds cases in abeyance for periods comparable to the length of deferral here. *See, e.g.*, *id.* at *1 (holding a case in abeyance in May 2025 where the agency "intend[ed] to complete any final rulemaking by fall 2026").

Several additional factors support the reasonableness of the abeyance's duration in this case. As referenced above, NHTSA lacked a Senate-confirmed Administrator until September 2025. *See* NHTSA, *Jonathan Morrison, Administrator*, https://perma.cc/W8BR-AVRR. The rulemaking is also technically complex—it sets minimum performance standards for vehicles and the associated test procedures, *see* 89 Fed. Reg. at 39,774-79 (appendices detailing testing specifications), and it entails a detailed cost-benefit analysis weighing safety benefits against industry costs, *see id.* at 39,765-68 (summary of the Rule's cost-benefit analysis). It is not surprising, then, that it took over 18 months from

the passage of the Infrastructure Investment and Jobs Act to the issuance of a notice of proposed rulemaking. *See Federal Motor Vehicle Safety Standards: Automatic Emergency Braking Systems for Light Vehicles*, 88 Fed. Reg. 38,632 (June 13, 2023). NHTSA's timeline for revising the Rule is fully consistent with its complexity and the practicalities of a leadership transition. Because this pace reflects a deliberate administrative process, there is no basis to disrupt the current abeyance.

## CONCLUSION

The government respectfully requests that this Court deny petitioner's motion to lift the abeyance.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MICHAEL S. RAAB
 */s/ David L. Peters*
DAVID L. PETERS
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 598-6735*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ David L. Peters*

David L. Peters

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I hereby certify the foregoing complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 1,913 words, according to Microsoft Word.

*/s/ David L. Peters*
David L. Peters