IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

ALLIANCE FOR AUTOMOTIVE INNOVATION,

Petitioner,

v.

DEPARTMENT OF TRANSPORTATION,

Respondent.

On Petition For Review of Final Rule of the
United States Department of Transportation

**REPLY IN SUPPORT OF
PETITIONER'S MOTION TO LIFT ABEYANCE**

The petition in this case was filed in January 2025. This case has been held in abeyance since then, because the Department has represented that it was reconsidering the rule at issue. But that status had not changed in over one year, and the compliance date for the rule is approaching. So – after confirming with the Department's lawyers that they had no further status update – the Alliance filed this motion to lift the abeyance.

Now, the Department has filed a response indicating that it has prepared a draft notice of proposed rulemaking. But the draft still is

undergoing internal review within the Department; the Department has not committed to any set time frame for publishing the proposal (much less actually amending the rule); and has not provided any assurances that any amendments to the rule will address the Alliance's substantive concerns. At the same time, the Department has not stayed or extended the compliance deadline in the rule. The lack of progress, combined with the looming compliance deadline, left the Alliance no option but to move to lift the abeyance so that this case can proceed.

1. The challenged rule requires the Alliance's members to implement advanced automated emergency braking (AEB) systems in every new vehicle they sell by September 2029. *Federal Motor Vehicle Safety Standards; Automatic Emergency Braking Systems for Light Vehicles*, 89 Fed. Reg. 39686, 39780 (May 9, 2024), *amended on reconsideration by Federal Motor Vehicle Safety Standards; Automatic Emergency Braking Systems for Light Vehicles*, 89 Fed. Reg. 93199 (Nov. 26, 2024) (the Rule). That is just over three calendar years, or two vehicle model years, away. The Department has not taken any steps to stay or extend the compliance deadline.

Designing, engineering, and manufacturing motor vehicles is a complex, time-consuming, and expensive process. Significant lead times are

required to develop, test, and implement the complex AEB systems contemplated by the Rule, to the extent those systems even are technologically feasible. *See* Doc. 2172328 (Mot.), at 3, 5. Thus, the Alliance's members must begin making significant investments now if they wish to have any chance of complying with the Rule (to the extent they can) by the regulatory deadline. They should not be required to do that when they have presented serious challenges to the Rule's validity.

2. The Department's opposition does not dispute these basic facts. The Department instead gives three reasons why the Court should continue the abeyance. *See* Doc. 2173906 (Opp.), at 7-11. Each lacks merit.

a. First, the Department states that the National Highway Traffic Safety Administration (NHTSA) has "completed a draft of a notice of proposed rulemaking" (NPRM) that is "undergoing review within the Department." Opp. 5; *see id.* at 7-8. Although this seems to indicate that NHTSA has finished reviewing the Rule, the draft remains an internal draft – not a published NPRM. The Department offers no timeline for when that draft will be submitted to the Office of Information and Regulatory Affairs, much less when a proposed rule might be published in the Federal Register for public comment. And of course, that would just be a proposed rule – not

a final rule.  The Department does not provide any indication of when an amended rule might be finalized or take effect.

The Department already has missed the internal deadlines it set for an NPRM.  Since September 2025, the Department has reported that it was working on an NPRM, and it set a target date for publication of February 2026.  *See* Off. of Info. & Regulatory Aff., Off. of Mgmt. & Budget, Exec. Off. of the Pres., *Amendments to FMVSS No. 127; Light Vehicle Automatic Emergency Braking*, bit.ly/4un5ZAp.  It is now three months after the Department's target date, and the Department has, at best, an internal draft and has not published a proposal.  This Court and the Alliance have no assurance that the internal draft will become a published proposal, let alone a final rule that addresses the Alliance's concerns with the Rule.  And in the meantime, the Department has not stayed the compliance date for the Rule.

The lack of any concrete timeline and the impending compliance date distinguish this case from *American Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir. 2012), and *Utah v. EPA*, No. 23-1157, 2025 WL 1354371 (D.C. Cir. May 2, 2025), which the Department repeatedly cites.  *See, e.g.*, Opp. 7. In *American Petroleum Institute*, the agency already had published a notice of proposed rulemaking with proposed revisions to the challenged rule.  683

F.3d at 387-88.  And in *Utah*, the agency had given a firm date by which it intended to complete its review of the challenged rule.  2025 WL 1354371, at *3 (statement of Rao, J.) (explaining that the agency "attested it plans to complete any new rule by fall 2026").  Further, the Supreme Court had stayed enforcement of the rule, and the agency itself had "effectively stayed the rule for every state in which it originally applied." *Id.*  Thus, there was no possibility that the rule would come into effect before the agency completed its review of the rule *and* the Court ruled on the petitioners' challenges (if any) to the revised rule.  *Id.*

Here, in contrast, the Department has not provided any firm date by which it intends to complete review of the Rule, and the Rule's compliance date remains in effect.  While the Department's internal draft is a step in the right direction, it is not enough to justify continuing the abeyance.

b.  Second, the Department argues (Opp. 8-9) that the Alliance and its members would not suffer significant hardship from continuing the abeyance, given that the compliance date is more than three years away. But as the Alliance explained, three years is not a significant amount of time to develop, test, and implement the complex AEB systems contemplated by the Rule (to the extent those systems even are feasible). Mot. 5.  If the case continues to be held in abeyance, the Alliance's members

will need to invest millions of dollars to attempt to comply with the Rule – even though they have raised serious challenges to the Rule's validity.

In response, the Department notes (Opp. 9) that the Alliance agreed to maintain the abeyance when the Department filed its most recent status update on March 23, 2026. But the Alliance is not required to agree to abeyance indefinitely just because it previously agreed to the abeyance, particularly when there has been no concrete progress on the Department's review of the Rule and the compliance deadline remains in effect. Notably, the Alliance asked the Department whether its proposed rulemaking would address the Alliance's concerns with the Rule, which could have alleviated the need to resume the case, and the Department declined to provide any such assurances.

The Department also argues (Opp. 9) that the Alliance and its members have had notice since 2021 that they will need to equip new vehicles "with at least some form of AEB system." But the details of that system matter. The Alliance has objected to particular requirements set out in the Rule, not to the concept of AEB systems generally. Indeed, the Alliance supports the development and use of AEB technology, and previously voluntarily committed to meeting installation targets for AEB systems with the agency – targets that its members have met. But the

Department did not finalize the Rule until November 2024, meaning the Alliance's members did not know until then exactly what the new requirements would be. *See Federal Motor Vehicle Safety Standards; Automatic Emergency Braking Systems for Light Vehicles*, 89 Fed. Reg. 93199 (Nov. 26, 2024). And, although the Department represents that it is working on an NPRM, the Alliance's members have no idea what the revised requirements will be. The Alliance's members should not have to guess when designing and manufacturing braking systems for motor vehicles.

c. Third, the Department argues (Opp. 10-11) that the period of the abeyance is reasonable in light of the technical complexity of the Rule. The Alliance does not dispute that the Rule is complex; that is why it will take the Alliance's members significant time, effort, and expense to attempt to comply with the Rule (to the extent they can). The problem is that the Department says that it needs more time to reconsider this complex rule, but then expects the Alliance's members to be taking steps now to try to comply with the Rule. That is not reasonable.

As the Department notes (Opp. 9), it could take this Court "over a year" to adjudicate the Alliance's challenges to the Rule. That means that if the Court resumes the briefing schedule today, by the time the Court issues its decision, the compliance deadline could be just one model year

away – which is the blink of an eye in the world of automotive design, engineering, and manufacturing.

Despite that, the Department proposes instead to maintain the abeyance for an unspecified amount of time while it continues to review the Rule, all while refusing to stay the compliance deadline for the Rule or provide any assurances that its review will address the Alliance's concerns with the Rule. This Court should lift the abeyance.

## CONCLUSION

The Court should lift the abeyance, set a deadline for the Department to file the certified index of record, and set a briefing schedule for the parties to brief the case on the merits.

Respectfully submitted,

/s/ *Nicole A. Saharsky*

| | |
|---|---|
| Charles H. Haake | Nicole A. Saharsky |
| Jessica L. Simmons | Erika Z. Jones |
| ALLIANCE FOR AUTOMOTIVE | Minh Nguyen-Dang |
| INNOVATION | MAYER BROWN LLP |
| 1050 K Street NW, Suite 650 | 1999 K Street NW |
| Washington, DC 20001 | Washington, DC 20006 |
| Tel: (202) 326-5500 | (202) 263-3000 |
| | nsaharsky@mayerbrown.com |

Dated: May 26, 2026

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this motion:

(i)    complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 1,556 words; and

(ii)    complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Word for Microsoft Office 365 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated:  May 26, 2026                    /s/ *Nicole A. Saharsky*
                                         Nicole A. Saharsky

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2026, the foregoing was filed with the Clerk of the United States Court of Appeals for the D.C. Circuit via the Court's CM/ECF system, which will send notice of the filing to all counsel who are registered CM/ECF users.

/s/ *Nicole A. Saharsky*
Nicole A. Saharsky